**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**  Civil Action No.
**Ex. Rel. PATTI SMITH**  **UNDER SEAL**
-vs-

**BOB DEAN et al.**

**QUI TAM COMPLAINT**

NOW INTO COURT, through undersigned counsel, come **Patti Smith, Stanley Durkins, Harris Loupe, Perry Burnett,** and **Eugene Billiot,** residents of Lake Charles, Louisiana, **Gary Jones**, a resident of Thibodeaux, Louisiana, and **Virgil Potter**, a resident of Houma, Louisiana, as well for the United States of America as for themselves, pursuant to the provisions of Title 31, Unites States Code, Sections 3729 and 3730, who respectfully aver:

1.

This court has jurisdiction pursuant to the provisions of Title 31, Unites States Code, Sections 3729 and 3730. Venue is proper in this district as the court has subject matter jurisdiction, one or more of the defendants transacts business here, and a substantial part of the events or omissions giving rise to the claim, including the planning for and making of false claims recited herein, occurred here.

2.

The following parties are made Defendants herein:

1

A. **Bob Dean, Jr.**, a resident of Upson County, Georgia, whose address is 1924 Crest Highway, Thomaston GA 30286.

B. **Maison DeVille Nursing Home, Inc. (operating under the tradename of** Maison DeVille Nursing Home**)**, a Louisiana corporation with its principal place of business located at 107 South Hollywood Dr., Houma, LA

C. **Park Place Healthcare, LLC**, a Louisiana limited liability company with its principal place of business located at 535 Commerce St., Gretna, LA 70056.

D. **Raceland Manor Nursing Home, Inc. (operating under the tradename of** South Lafourche Nursing & Rehab**)**, a Louisiana corporation with its principal place of business located at 146 E. 28th St., Cut Off, LA 70345.

E. **Uptown Healthcare Center, L.L.C (operating under the tradename of Maison Orleans Healthcare of New Orleans)** a Louisiana limited liability company with its principal place of business located at 1420 General Taylor St., New Orleans, LA 70115.

F. **River Palms Nursing & Rehab, LLC**, a Louisiana limited liability company with its principal place of business located at 5301 Tullis Dr., New Orleans, LA 70131.

G. **Maison DeVille Nursing Home of Harvey, L.L.C. (operating under the tradename of** Maison DeVille Nursing Home of Harvey**)**, a Louisiana limited liability company,

2

with its principal place of business located at 2233 Eighth St., Harvey LA 70058.

H. **St. Elizabeth's Caring, L.L.C. (operating under the tradename of** West Jefferson Health Care Center**),** a Louisiana limited liability company with its principal place of business located at 1020 Manhattan Blvd. Harvey, LA 70058.

I. **Bob Dean Enterprises, Inc.,** a Louisiana corporation with its principal place of business at 343 Third St., Suite 600, Baton Rouge, LA 70801. (Bob Dean, Jr. is referenced herein as "Defendant Dean" and the seven nursing homes are collectively referenced herein as "Bob Dean, Jr. Nursing Homes").

J. **Louisiana Health Care Consultants, LLC,** a Louisiana limited liability company, with its principal place of business located at 343 Third St., Suite 600, Baton Rouge, LA, 70801.

K. **DHNG, LLC,** a Louisiana limited liability company with its principal place of business located at 343 Third St., Suite 600, Baton Rouge, LA 70801.

L. **XYZ Insurance Companies**, the identities of which are presently unknown, yet which separately or together provide any, some or all of the Defendants insurance coverages for the acts, omissions, occurrences, employee dishonesty and/or liability of Defendants as set forth in this Petition.

3

3.

Plaintiffs reserve the right to add additional presently unknown Defendants for whom the identities become known through investigation and discovery, and which are liable jointly, severally, and *in solido* along with the other Defendants.

4.

Together the Defendants, Bob Dean, Jr., the Bob Dean Nursing Homes, Bob Dean Enterprises, LLC, Louisiana Health Care Consultants, LLC and DHNG, LLC constitute a single business enterprise as a matter of fact and law, which is referenced in this Petition as "Bob Dean, Jr. and his companies."

**BACKGROUND**

5.

The Defendants have for years operated in violation of both federal and Louisiana laws and regulations concerning the health and welfare of nursing home residents. Much of this illegal conduct was driven by schemes to obtain money by false pretenses, from their residents, from the State of Louisiana, and from the United States. It was an established practice at Defendants' nursing homes to use residents as profit centers rather than patients under their care.

6.

During the course of these schemes, Maison DeVille went to extraordinary lengths to avoid government scrutiny of its deceitful practices. Among other false practices, residents

admitted to the Defendants' nursing homes were deliberately not advised of their rights. At Maison DeVille, the residents' signatures on admission documents were often forged. This practice allowed the Defendants to avoid giving residents the opportunity to review their admission packets, which are required to contain recitations of the Louisiana Residents' Bill of Rights, thus keeping residents uninformed about their rights to demand information or to complain to the Louisiana Department of Health (LDH) about inadequate, improper, or bogus practices at the facility.

7.

Resident care at the defendants' nursing homes continually violated state nursing home regulations, the Louisiana Residents' Bill of Rights, and the Federal Nursing Home Reform Act. Among others, the following violations were regularly repeated:

   a. Regulations regarding patient hygiene were routinely ignored, including leaving incontinent residents without assistance - residents would go for months without being bathed, and sometimes were allowed to lie or sit unattended in their own urine and feces for extended periods of time.
   b. Facilities were allowed to become infested with rats, roaches, and ants, with roaches seen crawling all over facility walls, ants and roaches crawling over incapacitated residents in their beds, even crawling in their mouths.
   c. Bathrooms and other areas were allowed to develop mold, putting residents at risk of respiratory diseases and infections.
   d. Residents who asked for assistance or made complaints had their medication regimens delayed and were verbally abused.

e. Residents were not taken to scheduled appointments with medical specialists in a timely manner, sometimes putting their lives at risk.

f. Repeated nursing staff absences were not corrected by a system of coverage, leaving residents without essential monitoring and required doses of medication.

g. Statistical studies indicate an overuse of antipsychotic drugs at the Defendants' facilities, a practice which is associated with deliberate short-staffing to increase profits – Maison DeVille Houma was cited for misusing antipsychotics in 2019.

8.

The last two years of defendants' operations included even more appalling conduct. Accurate knowledge about nursing home infections was and is essential to the Louisiana Health Department's ability to take appropriate action to protect residents. In response to the ongoing Covid epidemic, LDH established Covid testing requirements for nursing home patients and required state-licensed homes to report monthly to LDH about infected residents and staff. But to avoid new and more detailed scrutiny of their nursing home operations, scrutiny that could include on-site reviews of residents' medical records – reviews which might expose their fraudulent schemes - the defendants deliberately put their residents' lives at risk by falsifying the tests, then giving false testing reports to LDH. Instead of swabbing patients' nostrils to conduct the test, the Defendants' employees swabbed the walls of their rooms instead. This conduct, done to perpetuate the Defendants' fraudulent schemes, also had an immediate monetary motive – Maison Deville's facilities were inadequate to isolate and treat Covid-positive patients. Patients who tested positive would have had to be transferred to other nursing homes, with a resultant loss of income to Maison DeVille.

## FEDERAL FALSE CLAIMS ACT VIOLATIONS

9.

The Defendants had very serious reasons to avoid inspections of their operations, inspections that would include reviews of their residents' medical records - they were engaging in schemes to defraud Medicare and Medicaid.

10.

It was a part of the defendants' schemes that they engaged in "SNF" (skilled nursing facility) bed frauds. Residents at Maison Deville who did not need and could not benefit from physical therapy were falsely diagnosed as in need of such treatment and were sent to facilities in Baton Rouge and Plaquemine. While there, these residents received treatments that were not medically necessary for them. After short stays at these facilities, usually seven to ten days, they would be returned to Maison DeVille. There, they were falsely designated as skilled nursing patients. This enabled Maison DeVille to falsely apply for and receive ninety days of SNF benefits for each such patient. These bogus transfers to rehabilitation facilities would then be repeated later, resulting in more fraud.

11.

Plaintiffs **Patti Smith** and **Stanley Durkins** were two such residents. Their medical records will confirm that they were sent to the Baton Rouge rehabilitation facility in 2021 and that CMS (the Center for Medicare and Medicaid Services) was thereafter billed for 90 days of SNF bed charges for which their medical conditions did not in fact qualify. Mrs. Smith is able to

live independently. She moved to Maison DeVille to be with her husband, who was significantly disabled. She did not ask to be sent to therapy and disagreed with defendants' staff about being sent for such treatment. Staff members told Mrs. Smith that being sent to therapy would mean that she could then reside at Maison DeVille for three months "for free." Before and after returning to Maison DeVille from the Baton Rouge facility, she received no therapeutic treatments of any kind. After a period of time corresponding with CMS rules elapsed, the defendants' staff again approached Mrs. Smith to go to therapy. She had experienced no change in her medical conditions that would justify such treatment. She again refused and did not go. CMS records will confirm that Maison Deville submitted three months of false claims for Mrs. Smith and was paid.

12.

Mr. Durkins, who has vision problems but who has no other disabilities, was taken from his bed in the middle of the night and told that he was being sent to rehabilitate in Baton Rouge. He protested but was laughed at, put into a van and transported to Baton Rouge anyway. While at the Baton Rouge facility, he was required to do walking, sitting, and standing exercises, which served no purpose because he has no such disabilities. Nothing was done there to address his vision issues. After a period of time corresponding with CMS rules elapsed, Mr. Durkins, again over his protest, was sent to Baton Rouge for the same pointless treatment. At no time while at Maison DeVille was he given therapeutic treatments of any kind. CMS records will confirm that Maison Deville submitted six months of false SNF claims for Mr. Smith and was paid.

13.

It was another part of the scheme that patients who were sent to rehabilitation facilities in fact received no skilled care upon their return to Maison Deville. **Mrs. Smith and Mr. Durkins** did not need such care. However, **Mr. Loupe** and **Mr. Burnett** did need it. Mr. Loupe was sent to the Baton Rouge facility, without protest, as he had experienced knee and shoulder injuries in the past. However, upon his return to Maison Deville his skilled treatment consisted merely of pushing a shopping cart down a hall and stretching rubber bands with his arms for a total of one month. Mr. Burnett, who needed help with walking, was sent to the Plaquemine facility, where he used a walker. Upon his return to Maison DeVille, he was not given a walker. Billings to CMS for services rendered to Mr. Loupe and Mr. Burnett were for skilled care which was not in fact given.

14.

It was another part of the scheme to falsely bill CMS for skilled nursing housing and treatment without involving outside rehabilitation facilities. **Mr. Potter** was told by Maison DeVille staff that he would be in rehabilitation for 90 days. He was neither sent to a rehabilitation facility nor provided with rehabilitation services at any time while in Maison Deville. Billings to CMS for skilled care for Mr. Potter were false. **Mr. Jones** was also never sent to an outside rehabilitation facility. Billings to CMS regarding Mr. Jones should be scrutinized for accuracy and truthfulness.

15.

A former Certified Nursing Assistant (CNA) at Maison Deville has confirmed that the Relators experiences regarding sending residents to Baton Rouge and Plaquemine for "rehabilitation services" was a part of a pattern of the submission of false claims to CMS for "SNF bed" reimbursements that continued through the course of her employment there until it ended in 2021. That CNA has identified multiple Maison Deville supervisors and medical personnel who repeatedly sent residents to rehabilitation facilities solely for the purpose of submitting claims to CMS and obtaining 90 days of CMS reimbursements for residents who in fact did not have medical needs requiring skilled nursing. A Therapist Supervisor at Maison DeVille stated to the CNA that Maison Deville was engaging in these fraudulent practices "to generate money."

16.

Further investigation of Maison Deville's billing practices has revealed that Maison DeVille also engaged in a scheme to falsely submit inaccurate billing codes ("upcode") claims on numerous occasions. A Nursing Director, a Therapist Supervisor and other staff members participated in this scheme to illicitly "generate money" for Maison DeVille. Residents were repeatedly given false diagnoses, claims to CMS were falsely manufactured for this purpose, and CMS paid those claims.

17.

On information and belief, the wrongful conduct described herein was a pattern carried out at the Defendants nursing homes generally, up to and until those homes were shut down by the

state in 2021. On information and belief, the losses sustained by the United States exceeds $500,000. The United States is entitled to treble damages pursuant to 31 U.S. Code 3729(a). Pursuant to 31 U.S. Code 3730 (d), the Relators are entitled to awards, the amount of which is to be determined by the court, and are further entitled to reasonable expenses, and payment by the defendant of their attorneys' fees and costs.

## LOUISIANA FALSE CLAIMS ACT VIOLATIONS

18.

The conduct set forth in paragraphs 9 through 17 above, adopted here by reference, was also designed to, and did, generate fraudulent billing to the Louisiana Medicaid authorities, resulting in losses to the state. This conduct violated the Louisiana Medical Assistance Programs Integrity Law, La. R.S. 46:439.2. The Relators bring this claim as Qui Tam Plaintiffs on behalf of themselves and the Louisiana medical assistance programs, pursuant to that statute.

19.

Pursuant to 31 U.S. Code 3730 (b) (2), this complaint is filed in camera, and service of the complaint, along with written disclosure of substantially all material evidence and information Relators possess, is being made on the government in conformity with rule 4 (i) of the federal Rules of Civil Procedure. Service upon the State of Louisiana is being made pursuant to La. R.S. 46:439.1. Service upon the defendant will not be made until the court so orders.

WHEREFORE, Plaintiffs pray that, after due proceedings, there be judgments in favor of the United States and the State of Louisiana for damages, with an apportionment of an award therefrom to Plaintiffs, and for expenses, attorneys' fees, and costs.

BY ATTORNEYS:

*/s/ Edward J. Gonzales III*
Edward J. Gonzales III
7553 N Jefferson Place Cir., Unit A
Baton Rouge, LA 70809
edgonzaleslaw@gmail.com
Tel. No. 225-933-2103
LA. Bar Roll #01381

*/s/ C. Frank Holthaus*
C. Frank Holthaus
4607 Bluebonnet Blvd. Suite B
Baton Rouge, LA 70809
Frank@holthauslaw.com
Tel. no. 225-295-8286
LA. Bar Roll #06976

*/s/ Scott H. Fruge*
Scott H. Fruge
112 Founders Drive
Baton Rouge, LA 70810
Scott@thefrugelawfirm.com
Tel. No. 225-372-6500
LA. Bar Roll #21599